

# NUMBER 13-09-134-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JORGE ROWE REYES,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                               Appellee.

## On appeal from the 24th District Court
## of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Vela
### Memorandum Opinion by Justice Vela

Appellant, Jorge Rowe Reyes, was indicted for the murder of Nelson Ibarra. *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2003). A jury found him guilty of the offense and assessed punishment at thirty years' imprisonment. In four issues, appellant argues that: (1) the prosecutor made improper arguments during opening statement; (2) the trial court erred by preventing him from fully cross-examining a witness; and (3) the trial court erred

by denying his request for a self-defense instruction. We affirm.

## I. Factual Background

At about 3:00 a.m. on September 23, 2008, Victoria police officer Chris Canales was dispatched to the Vista Del Sol Apartments. When he knocked on the front door to apartment 130, appellant and M.R.[1] opened it. Officer Canales saw "a lot of blood," broken furniture on the floor, and that appellant's pants "were saturated in blood." When Officer Canales looked to see if anyone was behind the front door, he saw Ibarra's legs. After appellant and M.R. were taken into custody, Officer Canales entered the apartment and determined that Ibarra was dead.

Witnesses testified that the day before the murder, Ibarra and appellant had an argument at the restaurant where they both worked. That evening, Ibarra, Herminio Hernandez, M.R., and appellant were drinking beer in the living room of the apartment in which they all lived. M.R. testified that appellant and Ibarra had a fist fight in the living room. After they stopped fighting, Ibarra sat down on the sofa, and M.R. and appellant pushed Hernandez out of the apartment. Afterwards, appellant "went towards Nelson [Ibarra]," who was sitting on a sofa and "hit him [Ibarra] with a knee, on the face." Ibarra fell to the floor, and appellant began hitting Ibarra "with chairs and chair legs and everything." Ibarra died at the scene.

On cross-examination, M.R. testified that during the time when appellant and Ibarra had the argument at work, Ibarra made a "physical advance" towards appellant. However, on the night of the murder, Ibarra did not "get physically aggressive towards" appellant. M.R. saw appellant attack Ibarra.

---

[1]At the time of the incident, M.R. was a minor and will be referred to by initials only.

2

Dr. Leisha Wood, the forensic pathologist who performed Ibarra's autopsy, testified that Ibarra's manner of death was a homicide resulting "from numerous types of abrasions and bruises." Specifically, she found numerous injuries on Ibarra's head and "fractures all throughout the skull, in varying degrees and sizes." She could not determine what exactly caused the injuries, but she said that it could be consistent with a wooden object. She found defensive wounds on Ibarra's hands.

Appellant chose not to testify at the guilt-innocence phase, and the defense presented no witnesses during the guilt-innocence phase.

## II. OPENING STATEMENT

In his first issue, appellant contends that the trial court erred in permitting the prosecutor to make improper arguments in his opening statement, which allegedly improperly shifted the burden of proof and violated appellant's right to the presumption of innocence. During the guilt-innocence phase, the prosecutor made the following remarks in his opening statement to the jury:

| | |
|---|---|
| Prosecutor: | Good morning, ladies and gentleman. Wood can be used for many things. It can be used to make shelter. It can be fuel for fire. And it can, also, be a weapon. |
| Defense Counsel: | Objection. This is argument, your Honor. This is supposed to be opening statement, not argument. |

The trial court overruled the objection. Later, the prosecutor stated:

| | |
|---|---|
| Prosecutor: | After they beat Herminio Hernandez, then they turned their anger and their hatred towards Nelson Ibarra— |
| Defense Counsel: | Your Honor, this is argument. This is interpretation of evidence we haven't even heard. |

The trial court overruled the objection, and the prosecutor continued as follows:

| | |
|---|---|
| Prosecutor: | That anger and that hatred left Mr. Ibarra fighting for his life. |

3

\* \* \*

> That piece of wood—That simple piece of wood was used as a deadly weapon. And as simple as that piece of wood was is as simple as this case is, ladies and gentleman. (indicating)
>
> It's not self-defense. It's not anything else but—

Defense Counsel:   Objection, your Honor. This is argument. We haven't heard any evidence, we're already getting into argument about what this case is or isn't.

The trial court overruled the objection, and the prosecutor told the jury, "The evidence will show that this isn't self-defense. It's not anything else but murder."

## A. Preservation of Error

Rule 33.1 of the Texas Rules of Appellate Procedure governs preservation of error and states in part:

> (a) In General. As a prerequisite to presenting a complaint for appellate review, the record must show that:
>
> > (1) the complaint was made to the trial court by a timely request, objection, or motion that:
> >
> > > (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]

Tex. R. App. P. 33.1.

"This Rule encompasses the concept of 'party responsibility.'" *Pena v. State*, 285 S.W.3d 459, 463 (Tex. Crim. App. 2009) (quoting *Reyna v. State*, 168 S.W.3d 173, 176 (Tex. Crim. App. 2005)). In other words, "[t]he complaining party bears the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale." *Id*. at 463-64. To avoid forfeiting the complaint on appeal, "the party must 'let the trial judge know what he wants,

4

why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'" *Id*. at 464 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). "Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial." *Id*. In making that determination, "we consider the context in which the complaint was made and the parties' shared understanding at that time." *Id*.

**B. Analysis**

While appellant's objections at trial were that the prosecutor's remarks constituted "argument" and "interpretation of evidence," the complaint on appeal focuses on the shifting of the burden of proof in the eyes of the jury and alleged violation of appellant's right to the presumption of innocence. After considering the context in which the objections were made and the parties' shared understanding at that time, the record does not show that appellant's objections clearly conveyed to the trial court that the prosecutor's remarks either shifted the burden of proof in the eyes of the jury or violated appellant's right to the presumption of innocence. Accordingly, the complaint on appeal does not comport with the objections made at trial. Therefore, appellant did not preserve error. *See* TEX. R. APP. P. 33.1; *Pena*, 285 S.W.3d at 464; *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (stating that constitutional error may be forfeited by failure to raise the issue at trial); *Wright v. State*, 776 S.W.2d 763, 766 (Tex. App.–Corpus Christi 1989, no pet.).

Fundamental error may be raised for the first time on appeal. *See* TEX. R. EVID. 103(d) (providing that an appellate court may take notice of fundamental errors effecting substantial rights, although the errors were not preserved at trial). Fundamental errors are

violations of rights that are "waivable only"[2] or denials of absolute systemic requirements[3]—both of which need not be preserved by objection. *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997). Thus, appellant was required to object unless the rights are either waivable only or an absolute systemic requirement. Appellant refers to no authority holding that these complaints constitute either a waivable only right or an absolute systemic requirement. Issue one is overruled.

### III. CROSS-EXAMINATION

## A. Credibility with Respect to Assault Charge

By his second issue, appellant contends that the trial court violated the Confrontation Clause to the Sixth Amendment of the United States Constitution by preventing him from fully cross-examining Hernandez concerning his credibility with respect to his plea of guilty to an assault charge. During the guilt-innocence phase, defense counsel cross-examined Hernandez about his prior assault conviction. Hernandez testified that he pleaded guilty to an assault charge; however, when defense counsel asked him if the assault he pleaded guilty to was self defense, Hernandez stated, "Yes. Because I had to defend myself." When defense counsel asked him, "And when you told the Judge[4] that it was your fault that you assaulted that person, you weren't really telling the truth, because

---

[2]Examples of rights that are waivable only include the rights to the assistance of counsel and to a jury trial. *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002).

[3]Examples of absolute systemic requirements include jurisdiction of the person, jurisdiction of the subject matter, a penal statute's being in compliance with the Separation of Powers section of the state constitution, a constitutional requirement that a district court must conduct its proceedings at the county seat, the constitutional prohibition of ex post facto laws, and certain constitutional restraints on the comments of a judge. *Id*. at 888-89.

[4]Defense counsel was not referring to the judge who presided over the trial now before us.

you're saying it was self-defense?", the prosecutor objected that "[h]e's pled guilty to that offense. He's not denying the offense." In response, defense counsel stated, "Your Honor, he's saying that he didn't do it, because of acting under self-defense. I have a right to fully cross-examine on that Sixth Amendment.—" At that point, the trial court sustained the objection.

## 1. Standard of Review and Applicable Law

A trial court's decision to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). "The trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement." *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

The Confrontation Clause of the Sixth Amendment guarantees that, "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Sixth Amendment right to confront witnesses includes the right to cross-examine them to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (citing *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). "This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination." *Id*.[5] Generally, the Sixth Amendment right to present evidence and

_____

[5]*See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (stating that "trial judges retain wide latitude" under the Confrontation Clause to impose restrictions on cross-examination based on such criteria as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.").

to cross-examine witnesses does not conflict with the corresponding rights under state evidentiary rules. *Id*. Thus, we can resolve most questions regarding cross-examination by looking to the Texas Rules of Evidence. *Id*. "In those rare situations in which the applicable rule of evidence conflicts with a federal constitutional right, Rule 101(c) [of the Texas Rules of Evidence] requires that the Constitution of the United States controls over the evidentiary rule." *Id*. In *Hammer*, the court of criminal appeals stated that "[t]he Confrontation Clause mandate of *Davis v. Alaska* is not inconsistent with Texas evidentiary law. Thus, compliance with a rule of evidence will, in most instances, avoid a constitutional question concerning the admissibility of such evidence." *Id*. at 566.

"Under Rule 404(a)(3) of the Texas Rules of Evidence, a defendant may always offer evidence of a pertinent character trait—such as truthfulness—of any witness. But, under Rule 608, the witness's general character for truthfulness may be shown only through reputation or opinion testimony." *Id*. at 563; *see* TEX. R. EVID. 608(a).[6] Our state evidentiary rules permit a party to cross-examine a witness "on specific instances of conduct when they are used to establish his specific bias, self-interest, or motive for testifying."[7] *Hammer*, 295 S.W.3d at 563.

## 2. Analysis

Appellant attempted to impeach Hernandez's credibility by showing through cross-examination that when Hernandez pleaded guilty to the prior assault, he was untruthful to

---

[6]Rule 608(a)(1) of the Texas Rules of Evidence provides: "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness. . . " TEX. R. EVID. 608(a)(1).

[7]In *Hammer*, the court of criminal appeals stated: "Under Rule 613(b), the opponent must first cross-examine the witness with the circumstances surrounding the bias, interest, or motive, and, if the witness denies the circumstances or the motive, the opponent may introduce extrinsic evidence to prove the motive or bias." *Hammer v. State*, 296 S.W.3d 561 (Tex. Crim. App. 2009). "Furthermore, Rule 404(b) explicitly permits the defense, as well as the prosecution, to offer evidence of other acts of misconduct to establish a person's motive for performing some act—such as making a false allegation against the defendant." *Id*.

the judge who presided over that case, because Hernandez assaulted the victim in self-defense, and therefore, was not guilty of assault.[8]   However, "[a] witness's general character for truthfulness or credibility may not be attacked by cross-examining him (or offering extrinsic evidence) concerning specific prior instances of untruthfulness."[9]  *Id*.; *see* TEX. R. EVID. 608(b);[10] *see also Lopez v. State*, 989 S.W.2d 402, 405 (Tex. App.–San Antonio 1999, no pet.); *Ruiz v. State*, 891 S.W.2d 302, 306 (Tex. App.–San Antonio 1994, pet. ref'd) (stating that "[i]n Texas, a witness may not be impeached with specific instances of bad conduct not resulting in conviction"); *Ramirez v. State*, 830 S.W.2d 827, 828-29 (Tex. App.–Corpus Christi 1992, no pet.) (stating that evidence showing that officer was terminated because, in a telephone call, he said that he could not report for duty because his truck had broken down when, in fact, he was visiting his girlfriend was inadmissible under Rule 608(b) to impeach him after he had testified to facts that established the charged offense and negated the lesser-included offense).

---

[8]In his appellate brief, appellant argues that he "has a right to question the witness' credibility, which he was doing when he started questioning the witness about lying under oath in a prior offense to which he pled.  Lying under oath is a serious matter and certainly raises questions of credibility."  Texas Rule of Evidence 609 provides for the admission of a witness's prior conviction for impeachment purposes. *See* TEX. R. EVID. 609.  However, nothing in the appellate record showed that Hernandez had either been charged with or convicted of any crime arising out of any statement he may have made either to a court official or to the judge who presided over the hearing at which Hernandez pleaded guilty to the prior offense.  Therefore, Rule 609 does not apply.  We note that appellant did cross-examine Hernandez about the fact that he had a prior conviction for assault.

[9]In *Hammer*, the court of criminal appeals stated with respect to this rule:

> For example, the defendant may not ask the witness:  Didn't you cheat on your income tax last year?  Didn't you lie on Tuesday about having an affair with your boss?  Didn't you steal five dollars from the church collection plate last week and then lie to the priest about it?  While all of those questions attack the witness's general character for truthfulness, that mode of impeachment is specifically barred by Rule 608(b).

*Hammer*, 296 S.W.3d at 563.

[10]Rule 608(b) provides in part, "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence."  TEX. R. EVID. 608(b).

We hold that whether Hernandez's testimony was admissible is at least subject to reasonable disagreement. Thus, the trial court did not abuse its discretion by denying appellant the opportunity to cross-examine Hernandez about whether he was untruthful to the judge that presided over his guilty plea to the assault charge. Issue two is overruled.

## B. Credibility with Respect to Intoxication

In issue three, appellant contends the trial court violated the Confrontation Clause of the Sixth Amendment to the United States Constitution by preventing him from fully cross-examining Hernandez concerning his credibility because of his intoxication "and regarding his role in this offense."

## 1. Context of the Complaint

Hernandez testified on cross-examination that during the day preceding the murder, he bought a six-pack of beer and drank all of it. That night, he and M.R. bought an eighteen-pack of beer from which Hernandez drank five or six beers. He drank the beers prior to Ibarra's murder. Hernandez denied being "drunk." When defense counsel asked him, "And it's fair to say, when guys start drinking beer, it's a lot easier to get angry; isn't it?" He replied, "I don't know. Of course, if something—if somebody offends you, you're going to get mad." When defense counsel asked him, "And, if somebody offends you, you are going to be more mad if you had been drinking beer; is that correct?" To this, he said, "Yes." After this exchange, the complained-of colloquy occurred as follows:

> Defense Counsel: So, the fact that you had volunteered to drink a bunch of beers, you were partly responsible for these problems that had occurred; weren't you?
>
> Prosecutor: Your Honor, I'll object. The question is argumentative.
>
> Defense Counsel: I'm just asking him—Your Honor, they asked the question and opened the door. I have the right to the full Sixth Amendment right.

10

The trial court told counsel to re-ask the question:

Defense Counsel: Sure. Since you had volunteered to drink many beers before all this arguing started happening, you are partly responsible for all these arguments and fights that started; aren't you?

Prosecutor: Your Honor, my objection was argumentative.

Trial Court: Sustained.

## 2. Preservation of Error

With respect to that part of appellant's complaint on appeal that the trial court prevented him from cross-examining Hernandez regarding Hernandez's role in the offense, Texas Rule of Evidence 103(a)(2) limits the scope of issues which may be appealed when evidence is limited or excluded. In other words, "[e]rror may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." TEX. R. EVID. 103(a)(2). The offer of proof may be in question-and-answer form or in the form of a concise statement by counsel. TEX. R. EVID. 103(b); *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). "An offer of proof to be accomplished by counsel's concise statement must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible." *Warner*, 969 S.W.2d at 2. The primary purpose of an offer of proof is to enable us to determine whether the exclusion was erroneous and harmful. MCCORMICK ON EVIDENCE § 51 (4th ed. 1992); *Accord*, STEVEN GOODE ET AL., 1 TEXAS PRACTICE—GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 103.3 (1993).

11

Here, the substance of the evidence was not made known to the trial court by offer. Further, the substance of the evidence was not apparent from the context within which questions were asked. Defense counsel's question, which the prosecutor objected to, asked Hernandez, "Since you had volunteered to drink many beers before all this arguing started happening, you are partly responsible for all these arguments and fights that started; aren't you?" It is not apparent from the context of this question that defense counsel was asking Hernandez about his role in the offense; i.e., Ibarra's murder. Because the substance of the evidence was not made known to the trial court by offer, and because the substance of the evidence was not apparent from the context within which questions were asked, appellant has failed to comply with Rule 103(a)(2). We hold that appellant waived any error with respect to the trial court's exclusion of Hernandez's testimony. *See* TEX. R. EVID. 103(a)(2); *Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999) (holding that defendant's argument regarding exclusion of evidence was waived because defendant did not make offer of proof regarding excluded testimony).

After the above colloquy, defense counsel, during the cross-examination of Hernandez, asked him a question akin to that which the prosecutor had previously objected to. Defense counsel asked Hernandez: "The fact that you have drank many beers, you caused some of these fights; didn't you?" The trial court allowed Hernandez to answer[11] the question. Thus, assuming, *arguendo*, the trial court erred in excluding the testimony,

---

[11]In his answer, Hernandez stated, in part:

They started telling me I couldn't be in that apartment. And then, from there, I asked them, "Give me a chance to get out." But it wasn't to tell them that I wanted to fight. I told them to give me an opportunity, so that I could leave the following day, because it wasn't just for me to leave, just like they had told me—

At that point, defense counsel objected, in relevant part, that he "believe[d] he's answered the question[.]" The trial court overruled the objection.

12

and error was preserved, any error in excluding the testimony was cured. *See Wade v. State*, 803 S.W.2d 806, 808 (Tex. App.–Fort Worth 1991, no pet.) (holding that although trial court erred in excluding certain evidence, error was cured because evidence was admitted through other testimony).

With respect to appellant's complaint on appeal that the trial court prevented him from cross-examining Hernandez regarding credibility because of intoxication,[12] the court of criminal appeals has recognized a distinction between the general rule in rule 103(a)(2) and the case in which the trial court does not permit the defendant to question a State's witness about matters that might affect the witness's credibility. *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987). In the latter case, the accused "need not show what his cross-examination of the witness would have affirmatively established; he must merely establish what general subject matter he desired to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence." *Id*.

Here, appellant did not "merely establish" that the "general subject matter"—intoxication—would be used to impeach Hernandez's credibility. We hold that appellant waived any error with respect to the trial court's exclusion of Hernandez's testimony on this topic. *See id*.

Defense counsel cross-examined Hernandez with respect to the amount of beer he drank prior to Ibarra's murder and whether Hernandez was intoxicated the evening of the murder. Thus, assuming, *arguendo*, this complaint was preserved, any error in excluding

---

[12]The court of criminal appeals has stated that "the right of cross-examination by the accused of a testifying State's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility." *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987). Intoxication "bear[s] on the amount of credibility [a witness's] testimony should receive." *Cain v. State*, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997).

the testimony was cured. *See Wade*, 803 S.W.2d at 808. Issue three is overruled.

## IV. SELF-DEFENSE INSTRUCTION

In issue four, appellant contends that the trial court erred by denying his request for an instruction in the charge on self-defense. During the charge conference at the guilt-innocence phase, defense counsel requested a self-defense instruction, which the trial court denied.

Appellant argues that there was evidence presented that he acted in self-defense and, therefore, the trial court should have included a self-defense instruction in the charge. He directs our attention to the following evidence: Holly Jedlicka, a crime scene unit supervisor, testified that the Texas Department of Public Safety identified Ibarra's fingerprints on some of the furniture in the apartment.

During the State's case-in-chief, the prosecutor played a videotape to the jury, depicting the argument that appellant and Ibarra had at the restaurant on the day preceding Ibarra's murder. The videotape showed Ibarra making threatening gestures at appellant.

On the evening of Ibarra's murder, appellant told his neighbor, Tom Davenport, that he got into an argument at the restaurant. Davenport testified, "It sounded like they were ganging up on him. And he was pretty upset." By "they," Davenport meant the employees at the restaurant. According to Davenport, the employees were appellant's roommates.

Appellant's wife, who lived in the apartment with appellant and the others, testified that on the evening of the murder, appellant came into her bedroom "[a] little bit agitated." She told him, "'No.'–'Don't fight.' You're all companions.'" After five minutes, appellant left the bedroom, and a fight ensued soon thereafter.

14

On the day preceding the murder, M.R. saw Ibarra make aggressive physical advances towards appellant while appellant and Ibarra were working at the restaurant. M.R. testified that Ibarra initiated the aggression.

## A. Standard of Review and Applicable Law

When evaluating charge error, we first decide whether there was error in the charge. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g). If so, "the next step is to make an evidentiary review . . . as well as a review of any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused." *Id*.

Prior to commencing deliberations, the trial court must provide the jury in a criminal case with "a written charge distinctly setting forth the law applicable to the case[.]" TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). "This law requires the trial judge to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence." *Walters v. State*, 247 S.W.3d 204, 208-09 (Tex. Crim. App. 2007). "A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony is not worthy of belief." *Id*. at 209. "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007). A defendant need not testify in order to raise a defense. *Boget v. State*, 40 S.W.3d 624, 626 (Tex. App.–San Antonio 2001), *aff'd*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2001). Defensive issues may be raised by the testimony of any witness, even those called by the State. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex.

15

App.–Houston [14th Dist.] 2003, pet. ref'd). When reviewing a trial court's decision to deny a requested defensive instruction, "we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). However, "if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue." *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

To justify the use of deadly force against another, an actor must first show that he reasonably believed the force was immediately necessary to protect himself or a third person against another's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a), 9.33 (Vernon 2003 & Supp. 2009). "A person has the right to defend himself from apparent danger to the same extent as he would if the danger were real." *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996) (citing *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984)).

## B. Analysis

The evidence does not entitle appellant to a self-defense instruction. There was no evidence that Ibarra either used force or attempted to use force against appellant such that appellant believed immediate force was necessary to defend himself while at the apartment. M.R. testified that appellant beat the victim to death without any provocation. Although there was some evidence of verbal threats by Ibarra against appellant, an accused is not entitled to a self-defense instruction if his or her use of force was in response to verbal provocation. *Id*. at 494. We hold the trial court did not err in failing to include a self-defense instruction in the charge. Issue four is overruled.

**V. Conclusion**

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the 1st
day of April, 2010.